

# Missouri Court of Appeals

## Southern District

### Division Two

K TRE HOLDINGS, LP,          )
SHARON ENGLE,                )
FRANCES HARE and JES BLAIR,  )
                             )
    Petitioners-Appellants,    )
                             )
v.                           )    No. SD35512
                             )    Filed:  July 26, 2019
MISSOURI DEPARTMENT OF       )
NATURAL RESOURCES, MISSOURI  )
CLEAN WATER COMMISSION, and  )
RNR FARM, LLC,               )
                             )
    Respondents-Respondents.   )

### APPEAL FROM THE CLEAN WATER COMMISSION

### <u>TRANSFERRED TO THE SUPREME COURT PER RULE 83.02</u>

K Tre Holdings, LP, Sharon Engle, Frances Hare and Jes Blair (collectively referred to as K Tre) seek judicial review of the decision of the Missouri Clean Water Commission (CWC) to approve a permit application filed by RNR Farm, LLC (RNR) for a poultry concentrated animal feeding operation (CAFO) in McDonald County, Missouri.[1]

---

[1]  Our opinion borrows substantially, without further attribution, from the prior Western District decision authored by Judge Cynthia Martin in ***In re Trenton Farms RE, LLC v. Hickory Neighbors United, Inc.***, No. WD 81385, 2019 WL 73232 (Mo. App. Jan. 2, 2019).

K Tre contends the CWC erred by approving the permit because: (1) RNR failed to provide the Department of Natural Resources (DNR) with an aerial map showing production area setback distances; (2) RNR failed to provide DNR with a copy of proposed building plans; and (3) four of the commissioners were unlawfully appointed to the CWC.[2] We affirm the CWC's order approving RNR's permit, but we transfer this case to our Supreme Court after opinion pursuant to Rule 83.02.[3]

**Background**

The subchapter containing the Missouri Clean Water Law is set out in §§ 644.006 through 644.141. It is Missouri's public policy to conserve, protect and maintain the waters of the state, and to meet these objectives while maintaining maximum employment and full industrial development. § 644.011. The administration of programs relating to environmental control and the conservation and management of natural resources is vested in DNR. § 640.010. The CWC is one of the commissions assigned to, and domiciled with, DNR. *See* § 640.010.3; § 644.021.1. Implementation of the Clean Water Law is vested in the CWC and DNR. § 644.026.1. DNR is authorized to promulgate rules regulating CAFOs. § 640.710.1. In accordance with regulations promulgated for that purpose, DNR reviews CAFO applications to determine permit eligibility. 10 CSR 20-6.010(2).[4]

---

[2] K Tre's brief contained six points. Before oral argument, K Tre filed a motion to withdraw Points 4-6 to narrow the issues for this Court's consideration and review. We grant that motion and will not address Points 4-6. RNR's motion to strike portions of K Tre's brief is denied.

[3] All rule references are to Missouri Court Rules (2019). All statutory references are to RSMo (2016).

[4] All regulatory references are to the Missouri Code of State Regulations (2012), unless otherwise indicated.

On February 16, 2016, RNR applied to DNR for a "General Operating Permit" to operate a Class 1C poultry CAFO in McDonald County, Missouri. On July 6, 2016, DNR issued the "State No-Discharge" CAFO operating permit to RNR. The facility description stated that "[p]rocess wastes are collected and managed as fertilizer by spreading onto agricultural fields at agricultural rates in accordance with this permit."

On August 2, 2016, K Tre appealed the issuance of that permit to the Administrative Hearing Commission (AHC). *See* § 621.250.1; § 640.013. RNR was granted leave to intervene in the appeal.

On October 21, 2016, the AHC conducted a hearing on K Tre's appeal, using the contested case procedures described in §§ 536.063 through 536.090 of the Missouri Administrative Procedure Act (MAPA). *See* § 621.250. As required by § 621.250.6, DNR bore the burden of proof in the proceeding before the AHC as the party defending the issuance of the CAFO permit. *See* § 640.012.

On November 14, 2016, the AHC issued a recommended decision, with findings of fact and conclusions of law. The AHC found that DNR sustained its burden of proof to establish that a CAFO permit was issued to RNR in accordance with the applicable law and regulations.

Once the AHC issued its recommended decision, the CWC was obligated to "issue its own decision, based on the appeal, for permit issuance, denial, or any condition of the permit." § 644.051.6; *see also* § 621.250.3. In doing so, the CWC was not required to issue its own decision with findings of fact and conclusions of law unless it decided to: (1) change a factual finding or legal conclusion made by the AHC; or (2) modify or vacate the AHC's recommended decision. § 644.051.6. The AHC's recommended decision was

3

placed on the CWC's December 12, 2017 meeting agenda. The CWC voted 5-0 (with Commissioner Hurst abstaining) to accept the AHC's recommended decision. The CWC's vote was reflected by the signature of five commissioners on the AHC's recommended decision, which the CWC adopted as its own. *See* § 621.250.3; § 644.051.6.

Pursuant to § 644.051.6, this Court possesses original jurisdiction over judicial review of the CWC's decision pursuant to the procedures for judicial review described in chapter 536 of the MAPA. K Tre timely filed its request for judicial review from the CWC's decision on January 11, 2018. The evidence presented to the AHC, as well as its findings of fact and conclusions of law, will be addressed in more detail as we consider K Tre's three points on appeal.

**Standard of Review**

On judicial review of an administrative action pursuant to chapter 536, this Court is directed to determine the matter "upon the petition and record filed[.]" § 536.140.1. As provided by that statute:

> The inquiry may extend to a determination of whether the action of the agency
>
> (1) Is in violation of constitutional provisions;
>
> (2) Is in excess of the statutory authority or jurisdiction of the agency;
>
> (3) Is unsupported by competent and substantial evidence upon the whole record;
>
> (4) Is, for any other reason, unauthorized by law;
>
> (5) Is made upon unlawful procedure or without a fair trial;
>
> (6) Is arbitrary, capricious or unreasonable;
>
> (7) Involves an abuse of discretion.

4

§ 536.140.2. This Court must render a decision "affirming, reversing, or modifying the agency's order, and may order the reconsideration of the case in the light of the court's opinion ... and may order the agency to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in the agency, unless the court determines that the agency decision was arbitrary or capricious." § 536.140.5.

## Discussion and Decision

### *Point 1*

K Tre's first point contends the CWC erred in approving the CAFO permit because RNR failed to provide DNR with an aerial map showing production area setback distances in response to a DNR deficiency letter requesting the same. The following additional facts are relevant to this point.

RNR's permit application was filed on February 16, 2016.[5] RNR's permit application documents were included in Exhibit 2. Exhibit 2, a multipage document, includes two relevant photographs. Page 7 of the exhibit is an aerial photograph entitled "General Layout Map" and dated 1/25/16. It is scaled at 1 inch = 440 feet. It contains a compass rose and a legal description. It contains diagrams with distances showing the locations of planned wells, a stacking shed composter, the property boundary lines and planned poultry houses. Page 8 of Exhibit 2 is an aerial photograph entitled "New Poultry

---

[5] The regulation then in effect required RNR to provide, *inter alia*, an aerial map or drawing that showed "the spatial location and extent of the production area. Each drawing or map must be easily readable and include a visual scale, a north directional arrow, a fixed geographic reference point, and the date the drawing or map was completed." 10 CSR 20-8.300(3)(A)2.

Houses" and dated 12/24/2015. It is scaled at 1 inch = 1000 feet. It includes a compass rose, a legal description, the location of the production houses and property boundary, and the 1500-foot and 1000-foot buffer lines. The photograph appears underexposed and fairly dark.

On March 1, 2016, DNR issued a deficiency letter requiring RNR to provide an aerial map showing production area setback distances.[6] In response to the letter, RNR submitted a Google Earth image. This 2014 aerial photograph contains the latitude and longitude for the site. It is labeled with road names and includes an overlaid drawing that shows the location of the production houses and stacking shed composter in yellow and a number of blue and red circles around the production houses. The blue circles correspond with the 1500-foot setback shown on page 8 of Exhibit 2.

The AHC hearing was held on October 21, 2016. Diane Reinhardt (Reinhardt) was the first witness. Reinhardt was a civil engineer with nine years of experience with DNR and 20 years of experience in start-to-finish engineering work. That included the planning, design, layout, surveying, construction and inspection of CAFOs. Reinhardt worked as an

---

[6] In relevant part, the regulations then in effect stated:

6. … When an application is submitted sufficiently complete, but is otherwise deficient, the applicant and the applicant's engineer will be notified of the deficiency and will be provided time to address department comments and submit corrections. Processing of the application may be placed on hold until the applicant has corrected identified deficiencies.

7. Applicants who fail to correct deficiencies and/or fail to satisfy all department comments after two (2) certified department comment letters shall have the application returned as incomplete and the construction and operating permit fees shall be forfeited[.]

10 CSR 20-6.300(2)(F)6-7.

environmental engineer for DNR as part of the Construction Permitting Section. She had reviewed RNR's permit application materials and the deficiency letter. She described RNR's application, collectively identified as Exhibit 2, as containing "several maps and aerial photos depending on what information is needed." She described the aerial photograph on page 7 of Exhibit 2 as "the general layout map" that showed the setback distances. She described page 8 of Exhibit 2 as the aerial photograph with the buffer area map. This photograph "shows buffer distances relative to the production barns." She described RNR's Exhibit 6 as an aerial map that showed the buffer areas for neighbor-notification purposes. Reinhardt testified that Exhibit 6 qualified as the aerial map requested in the deficiency letter:

> Q  … I'd ask you to please turn to Exhibit 6. And could you identify that one, please?
>
> A  That is a map that's produced to determine the buffer areas for neighbor notification purposes.
>
> Q  And was that submitted to DNR by Renner or RNR Farm, to your knowledge?
>
> A  Yes.
>
> Q  And does that qualify as the aerial map that was requested by DNR?
>
> A  Yes. I believe the aerial map, we just needed one that – that had better resolution and showed the dwellings on it. So this is a more clear copy. So, yes, that satisfied the requirement.

Based upon Reinhardt's testimony, the CWC found that Exhibit 6 satisfied DNR's request for an aerial map "because DNR only needed an aerial map with better resolution." The CWC concluded that this corrected the deficiency:

> [Reinhardt] testified that the map contained on page 7 of [Exhibit 2] is a general layout map that showed the setbacks and buffer distances relative to the production barns. She stated that Exhibit 6 was produced to

7

determine the buffer areas for neighbor notification, and it satisfied DNR's requirement for an aerial map in its deficiency letter because DNR only needed a map with better resolution that also depicted the dwellings. [K Tre] did not present evidence to discredit Reinhardt's testimony…. DNR presented credible evidence that the alleged deficiencies were corrected. This is further evidenced by the fact that DNR did not send RNR Farm a second deficiency letter as addressed in 10 CSR 20-6.300(2)(F)[7].

We must affirm the agency's decision if it is supported by competent and substantial evidence on the whole record. *See* MO. CONST. art. V § 18; § 536.140.2(3); ***Wagner v. Missouri State Bd. of Nursing***, 570 S.W.3d 147, 151 (Mo. App. 2019). As to factual matters, we will not substitute our judgment for that of the administrative agency. ***Owens v. Missouri State Bd. of Nursing***, 474 S.W.3d 607, 611 (Mo. App. 2015).

On appeal, K Tre contends the evidence shows RNR failed to provide DNR with an aerial map showing production area setback distances after receiving DNR's deficiency letter. We disagree.

A CAFO poultry production barn for a type 1C class size must be set back at least 1000 feet from the nearest public building or occupied residence. *See* § 640.710.2(1). The CAFO applicant also is required to give notice to neighbors within 1.5 times the § 640.710.2 setback distance. *See* § 640.715.1. The aerial maps requested by DNR are used to meet these two requirements.

Reinhardt testified that pages 7 and 8 of Exhibit 2, and Exhibit 6, viewed collectively, provided the necessary information to view the production area setback distances for the public building/occupied dwelling and for neighbor-notification purposes. The CWC found Reinhardt's testimony credible, and we defer to that factual determination. In addition, DNR did not issue a second deficiency letter after receiving Exhibit 6.

8

Moreover, K Tre presented no evidence that either the 1000-foot or 1500-foot setback distance was violated in this case. Point 1 is denied.

K Tre's second point contends the CWC erred in approving the CAFO permit because RNR failed to provide DNR with a copy of proposed building plans in response to a DNR deficiency letter requesting the same. The following additional facts are relevant to this point.

RNR's application for a CAFO operating permit included Form W, which requested a "State No-Discharge" permit. This form did not include an engineer's certification. The March 1, 2016 deficiency letter issued by DNR asked RNR to "have your engineer send in a copy of your proposed building plans with his seal stamped indicating that the proposed CAFO is designed to regulation specifications." In response, RNR submitted a second Form W CAFO operating permit application that included a section for Engineer Certification. Part 13 of this document stated:

> House Bill (HB) 28, which became effective on August 28, 2013, contained provisions that changed construction permitting requirements. Construction permits are required for the construction of an earthen storage structure to hold, convey, contain, store, or treat domestic, agricultural, or industrial process wastewater. Construction of all other point source systems designed to hold, convey, contain, store, or treat domestic, agricultural, or industrial process waste must be designed by a professional engineer registered in Missouri in accordance with design regulations.

This Form W was signed and sealed by a Missouri engineering firm and contained the following certification: "I, Project Engineer, certify that the above described systems have been designed in accordance with Missouri CAFO design regulations in 10 CSR 20-8.300."

At the AHC hearing, engineer Reinhardt testified that the second Form W with the engineer's certification was sufficient to satisfy the deficiency letter request:

9

Q (By DNR counsel) Okay. And addressing another item that was in the letter, proposed building plans with an engineer's seal, did Mr. Renner or RNR Farm send anything to address that item?

A Yes. They submitted a copy – a second copy of Form W, which is our application form for the operating permit for a CAFO, that has an engineer's seal on it and a certification statement declaring that the facility was designed in accordance with the regulations.

Q Okay. And do you find that document here as an exhibit somewhere?

A That would be in Exhibit 10. And that's the entirety of Exhibit 10, the two-page document. The seal is on Page 2.

Q Okay. And looking at Page 2 specifically, you mentioned the seal. And I think you described it briefly. But – so I apologize if I'm rehashing a bit. But – so what is the significance of the seal and certification there on Page 2?

A The seal certifies that the appli – application of facility was designed in accordance with our regulations.

Q Okay. And so currently, does DNR actually require submission of actual building plans?

A No.

Q Okay. And why is that?

A Because of House Bill 28, which resulted in a change to the statutes in August of 2013, construction permits are no longer required for the construction of CAFOs unless they will have an earthen basin. In this case, there was no earthen basin, so the certification statement is the engineer's assumption of responsibility for the completion and certification of the design.

The CWC found that, in response to the deficiency letter, RNR provided "[a] second copy of Form W, which is DNR's application form for the operating permit for a CAFO, that had an engineer's seal from the project engineer … declaring that the facility was designed in accordance with the regulations …." Based on that updated form and Reinhardt's testimony about it, the CWC concluded that:

10

RNR Farm submitted a new Form W that contained an engineer's seal and certification attesting that the system was designed in accordance with the design regulations contained in 10 CSR 20-8.300. DNR presented credible evidence that the alleged deficiencies were corrected. This is further evidenced by the fact that DNR did not send RNR Farm a second deficiency letter as addressed in 10 CSR 20-6.300(2)(F)[7]. Accordingly, we find no grounds to deny the Permit based on application deficiencies pled by [K Tre].

(Footnote omitted.)

On appeal, K Tre contends the evidence shows RNR failed to provide DNR with a copy of proposed building plans as required by the March 2012 version of 10 CSR-8.300(3). This point lacks merit because the part of this regulation cited by K Tre was no longer valid when RNR applied for its operating permit. The March 2012 regulation stated:

(3) Applications for a construction permit, or for an operating permit that did not previously receive a construction permit, shall submit one (1) set of documents described in this section for department approval as part of the permit application process. (A) Engineering Documents … 3. Construction plan drawings.

10 CSR 20-8.300(3)(A)3. In August 2013, however, § 644.051.3 was amended to substantially modify the requirements for a construction permit. *See* H.B. 28, 2013 Mo. Laws 254-55. In relevant part, this statute was amended to include the following language:

In addition, any point source that proposes to construct an earthen storage structure to hold, convey, contain, store or treat domestic, agricultural, or industrial process wastewater also shall be subject to the construction permit provisions of this subsection. All other construction-related activities at point sources shall be exempt from the construction permit requirements. All activities that are exempted from the construction permit requirement are subject to the following conditions:

a. Any point source system designed to hold, convey, contain, store or treat domestic, agricultural or industrial process wastewater shall be designed by a professional engineer registered in Missouri in accordance with the commission's design rules;

b. Such point source system shall be constructed in accordance with the registered professional engineer's design and plans[.]

§ 644.051.3.  Because of this change, DNR was required to follow the statute as amended, rather than the earlier regulation.  *See Leeper v. Scorpio Supply IV, LLC*, 351 S.W.3d 784, 793 (Mo. App. 2011) (a regulation in direct conflict with a statute is invalid).  Based upon this statutory change, 10 CSR 20-8.300(3) was later amended to generally remove the requirement for a construction permit for a CAFO unless an earthen storage structure is being constructed.  *See* September 2016 regulations 10 CSR 20-8.300(3)[7] and 10 CSR 20-6.300(2)(E).  RNR's second Form W complied with the statutory requirements in § 644.051.3.  Reinhardt's testimony concerning the amendment of § 644.051.3 supports the CWC finding of fact and conclusion of law on this issue.  Point 2 is denied.

## *Point 3*

K Tre's third point contends the CWC erred in approving the CAFO permit because four of its commissioners were unlawfully appointed pursuant to an unconstitutional statute.  The issue presented in this case is identical to the one decided by the Western District in *In re Trenton Farms RE, LLC v. Hickory Neighbors United, Inc.*, No. WD 81385, 2019 WL 73232 (Mo. App. Jan. 2, 2019), and transferred to our Supreme Court on April 30, 2019.  Like the Western District, we conclude that K Tre does not have the authority to assert this issue.  *Trenton Farms*, slip op. at 7.  The proper method to challenge

---

[7] In relevant part, this amended regulation states:

Permit Application Documents. Applicants for a construction permit for earthen basins shall include one (1) set of documents described in this section for department approval as part of the construction permit application process. Applicants who are not constructing earthen basins and are seeking an operating permit shall develop and maintain these documents and submit those required in 10 CSR 20-6.300.

10 CSR 20-8.300(3).

the constitutional validity of a commissioner's authority is through a *quo warranto* action. *Id*. We have reviewed the Western District's analysis of this issue and agree with it. Because we conclude that K Tre cannot privately challenge whether commissioners on the CWC were serving unlawfully pursuant to an unconstitutional statute, Point 3 is denied.

The CWC's order approving RNR's permit is affirmed. Given the general interest and importance of the issue raised in Point 3 and the pendency of that issue in our Supreme Court, however, we transfer this case after opinion pursuant to Rule 83.02.

JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR